### BUILDING COMMISSION OF THE CITY OF DETROIT v. KUNIN.

1. MUNICIPAL CORPORATIONS—EQUITY—ORDINANCES—ENFORCEMENT OF BUILDING ORDINANCE.

   An ordinance of the city of Detroit providing that the department of buildings shall have power, after notice and a hearing, to stop the construction, alteration, etc., of any building which violates the restrictions of the ordinance, and that the department may apply to the court to restrain the further violation of its terms, authorizes an injunction at the instance of the department as if the structure had been first declared to be a public nuisance.

2. SAME—BUILDING CODE—RESTRICTIONS.

   Such ordinance is not invalid because it prescribes what percentage of a lot may be occupied with a tenement, and prescribes the size of the yard at the rear: the restrictions being for the benefit of the community as a whole and of the adjacent property.

3. SAME—PRESUMPTIONS—BURDEN.

The presumption being that an ordinance is valid, the duty of establishing its invalidity rests on the party who attacks it.

4. SAME—CONSTRUCTION.

The court has no right to invade the province of the legislature, and is required, if it can consistently do so, to give an ordinance such a construction as will sustain it: the power to declare an enactment invalid is limited to cases in which it is clearly made to appear to be unreasonable or oppressive in its operation.

5. SAME—UNREASONABLENESS.

Mere evidence that some unreasonable result occurs in an individual case is not ground sufficient to invalidate an ordinance.

6. SAME—INJUNCTION—ESTOPPEL.

Complainant building commission was not estopped from maintaining an injunction bill to prevent the erection of an apartment building not in conformity with the building code, although it had granted a permit to construct the building where the ordinance did not require the issuance of a permit for the erection of a tenement occupied by three or more families who do cooking, etc., on the premises.

Appeal from Wayne; Murphy, J. Submitted June 17, 1914. (Docket No. 94.) Decided July 24, 1914.

Bill by the building commission of the city of Detroit against Samuel Kunin and others for an injunction to prohibit an alleged violation of the municipal building code. From a decree for complainant, defendants appeal. Affirmed.

*Richard I. Lawson,* Corporation Counsel, and *James H. Lee,* Assistant Corporation Counsel, for complainant.

*McHugh, Gallagher, O'Neil & McGann,* for defendants.

KUHN, J. The bill of complaint in this cause prays

for an injunction restraining the defendants from continuing the construction of a building in the city of Detroit alleged to be in violation of an ordinance of said city known as the building code. The defendants demurred to the bill of complaint, and, upon their demurrer being overruled, filed an answer and cross-bill denying complainant's right to injunctive relief. Upon hearing, the cross-bill was dismissed and the defendants enjoined, as prayed for in complainant's bill of complaint. From this decree the defendants have appealed, and counsel, in their brief, state that the questions involved are as follows:

(1) May a municipality enjoin a threatened violation of an ordinance?

(2) Is section 7, art. 31 of the building code valid?

(3) After issuing the permit and allowing defendants to expend from $10,000 to $12,000 upon the building, is the city estopped from complaining of the violation of the ordinance?

In support of the contention that equity will not enjoin a threatened violation of a municipal ordinance, the cases of the *Village of St. Johns* v. *McFarlan*, 33 Mich. 72 (20 Am. Rep. 671), and *Micks* v. *Mason*, 145 Mich. 212, 214, 215 (108 N. W. 707, 11 L. R. A. [N. S.] 653, 9 Am. & Eng. Ann. Cas. 291), are relied upon. In the latter case this court said:

"The question here is whether a municipality in pursuance to delegated authority to fix fire limits and to direct the manner of constructing buildings within such district with respect to protection against fire, may, by ordinance, provide that a building not so constructed shall be deemed a nuisance and authorize its abatement as such. Such right was not negatived by *Village of St. Johns* v. *McFarlan, supra,* and has never been denied by this court. The question has often arisen in other jurisdictions, and, so far as our examination enlightens us, the authority to abate new buildings constructed in violation of existing ordinances has been affirmed whenever the question has arisen. Not in all cases has the right to abate been

rested on the ground that a building not constructed in compliance with the ordinance is a nuisance *per se,* but in some it has been deemed sufficient to say that the building so erected was erected in defiance of law; but, whatever the reasoning adopted, the right has been affirmed.    See *Hine* v. *City of New Haven,* 40 Conn. 478; *Baumgartner* v. *Hasty,* 100 Ind. 575 [50 Am. Rep. 830]; *First Nat. Bank of Mt. Vernon* v. *Sarlls,* 129 Ind. 201 [28 N. E. 434] 13 L. R. A. 481 [28 Am. St. Rep. 185]; *Commonwealth* v. *McDonald,* 16 Serg. & R. (Pa.) 390; *Inhabitants of Arundel* v. *McCulloch,* 10 Mass. 70; *Klingler* v. *Bickel,* 117 Pa. 326 [11 Atl. 555] (distinguishing *Fields* v. *Stokley,* 99 Pa. 306 [44 Am. Rep. 109], cited by the circuit judge); *Ford* v. *Thralkill,* 84 Ga. 169 [10 S. E. 600]; *McKibbin* v. *Fort Smith,* 35 Ark. 352; *Eichenlaub* v. *City of St. Joseph,* 113 Mo. 395 [21 S. W. 8], 18 L. R. A. 590; Freund on Police Power, § 528."

The ordinance in question provides, in addition to its penal provisions, that:

"The department of buildings shall have the power after notice and hearing to stop the construction, repair, alteration or removal of any building, fence, billboard, sign or other structure, when being constructed in violation of this ordinance, and to order in writing any and all persons in any way engaged, to stop and desist from such construction, and such construction shall not be resumed until the terms of this ordinance shall have been complied with.

"If such order is not obeyed, the department of buildings may apply to any court of competent jurisdiction to restrain any person from such disobedience, notwithstanding such disobedience may be punishable by fine or imprisonment as hereinafter provided."

It is true that the ordinance does not in terms declare a building erected in violation of its provisions a nuisance, but, by virtue of this provision for its enforcement, it does so in effect, and therefore, in our opinion, brings the situation within the spirit of decisions above cited.

The other two questions involved in this appeal are clearly treated in the opinion of the learned trial judge in deciding the cause below, and, as we agree with his conclusions, will adopt his opinion as our own:

"Pursuant to a local act passed at the legislative session of 1907, authorizing the city of Detroit to regulate the construction of buildings, and to establish a department of buildings, the common council of that city duly adopted an ordinance known as the building code of the city of Detroit, which was in force at the time in issue herein.

"By the terms of the code, any building intended to be occupied, wholly or in part, as a residence for three or more families living independently of each other, and having cooking done on the premises, is called a 'tenement.' Apparently through omission no building permit is required to be issued by the department of buildings for the construction of a tenement, although permits must be obtained before the construction of any other kind of building may be begun.

"Upon July 21, 1913, however, the department of buildings issued a building permit for a tenement to the defendant Swirskey, as architect, and to the defendant Kunin, as owner of a lot situated on the northeast corner of Third and Merrick avenues, in the city of Detroit, this lot, having a frontage as platted of 45 feet on Third avenue, and a depth of 125 feet on Merrick avenue. The accompanying plans filed with the department of buildings showed that a brick veneered building of nine housekeeping apartments for families was intended to be built, entrance into three of which was to be had from Third avenue, and entrance to the others was to be had from Merrick avenue. One of the three apartments facing Third avenue was in the basement; the others, for the first and second floors of the building, had their entrance from the first floor. Work upon the construction of the building was begun soon after the permit was obtained. As planned, this tenement is in compliance with section 4 of article 31 of the code. By that section no tenement is permitted to cover more than 80 per cent. of a lot bounded by two or more intersecting streets.

"It is contended in this case, however, that, as constructed, the building violates so much of section 7 of article 31 of the code as provides that: 'In the rear of every tenement hereafter erected, there shall be a yard, extending across the entire width of the lot, at every point open from the ground to the sky unobstructed except by fire escapes or uninclosed outside stairs and porches. The depth of said yard, measured in the clear from the porches to the rear line of the lot shall not be less than 15 feet in any part.'

"The defendant Philip H. Garelick is the contractor for the work of erecting the building; he also appears to have some interest in the land.

"Upon November 24, 1913, the department of buildings revoked the permit issued for the construction of the building, upon the ground that its erection would be contrary to that part of section 7 of article 31 just quoted. This action of the department was taken, pursuant to a writ of mandamus issued out of this court in the case of Stella W. Stewart, Relator, v. Department of Buildings, Respondent, being File No. 58,063. These defendants were not parties to that proceeding, and are therefore not bound by it. It was instituted by Mrs. Stewart as the owner of property immediately contiguous on the north of the premises herein involved. The writ which was granted provided that, as the building in question was being erected in violation of section 7 of article 31, cited above, the department of buildings should, after due notice to the defendants Kunin and Swirskey, enter an order stopping the construction of the building and preventing resumption of the work thereon until the building code had been complied with in the respect mentioned. This writ of mandamus issued November 20, 1913.

"After due revocation of the permit by the department of buildings, work was resumed by the defendants Kunin and Swirskey upon the building, and was continued, intermittently, if not consecutively, until as late a day as December 30, 1913. Some of this last-mentioned work, however, if not all of it, was prosecuted by them in order that thereby the issues raised herein might properly be made the basis of a suitable action.

181 Mich.—39.

"This bill was filed by the department of buildings —described in the bill as the building commission of the city of Detroit—on January 10, 1914, and seeks permanently to enjoin the defendants from the further erection of the building until compliance has been had with the provisions of the building code.

"Demurrer was interposed by the defendants, and, coming on to be heard by Judge Van Zile in this court, was overruled by him, and the cause was set down for immediate hearing as soon as answer should be filed. The defendants have now answered, and also seek affirmative relief. They ask that the department of buildings be enjoined from in any manner interfering with the completion of the building.

"During the progress of the hearing a view of the premises was had. It was then learned by the complainant for the first time that there had been, without authority, a departure from the plan filed with it and pursuant to which its permit was originally granted. The plan providing for the entrances to the first and second floor apartments upon Third avenue has been abandoned, and these apartments have been constructed so that entrance to them would be from Merrick avenue. Thus the only apartment left facing Third avenue was the one in the basement upon that street. This has resulted practically in making the frontage of the tenement wholly upon Merrick avenue.

"As bearing upon the general attitude of the defendants, it is likewise significant to note that the view of the premises also disclosed their failure to comply with an alteration exacted by the department by which the rear porches were to be reduced in size. These porches have been constructed as originally planned, and not in conformity with the reduction in size ordered.

"The defendants take the position that the requirement of section 7 of article 31, above cited, is so unreasonable that it must be held invalid. They furthermore invoke the defense of estoppel. In this respect it is contended that the complainant is guilty of laches in the premises, in permitting the work to be undertaken under its permit and to be prosecuted until a time when the defendants, in good faith, had

expended a very large sum of money upon their undertaking.

"Approaching the question of the claimed invalidity of section 7, one is confronted with the presumption of the validity of this enactment. The duty of establishing invalidity rests upon the defendants. The court is required, if it can consistently do so, to give to the provision such a reasonable construction as will sustain it. It has no right to invade the legislative province. Its power is confined to those cases in which a municipal ordinance is clearly and manifestly made to appear to be unreasonable or oppressive in its operation.

"I am unable to reach the conclusion contended for in this respect by the defendants. Upon analysis of this section it may appear that some other or different provision might equally serve the demands of wholesome housing in a populous community such as the city of Detroit. That, however, is a matter for the legislative, and not the judicial, discretion. Such provisions as these are intended not solely for the welfare of the occupants of the premises being constructed; they are beneficial as well for those who live in buildings immediately adjacent and for the community as a whole. Just what specific considerations operated upon the common council in reaching the conclusion enacted by the ordinance does not appear; nor is there any testimony which, in my view, shows the application of section 7 to the lot in question to be unreasonable. This much must be taken for granted: The common council acted with knowledge of the prevailing width and depth of lots in this community. Even should some unreasonable result appear in an isolated case as the consequence of the council's action, this could not be made to justify invalidating the enactment. In my judgment, therefore, neither in its general terms nor in its specific application is the ordinance shown to be unreasonable.

"The discovery upon the inspection of the premises that the plan of the building had been changed without authority so as to give it, as was said above, practically its whole frontage on Merrick avenue presents a situation not contemplated by the pleadings.

"Under the plan as originally presented and approved by the department, the contemplated building was approved as coming within the provisions of section 4, and the position was taken that section 7, being in conflict therewith, was not applicable.

"In my view, however, these two sections must be read together, or construed as in harmony with each other, and not hostile to each other. This building, with these two sections so construed, must, in my judgment, as it now stands, be regarded as fronting upon Merrick avenue, and not on Third avenue, as the department viewed the matter when issuing the permit. This is the situation which has been created by the voluntary and unwarranted act of the defendants. It may be noted in passing that, even if the building were regarded as fronting on Third avenue and its rear as abutting the alley to the east, the provision of section 7 is violated.

"With section 7 held to be enforceable, is it shown that the defendants are entitled to any equitable relief under their claim that the complainant is estopped from maintaining its bill? No permit was required as a prerequisite to the commencement of this building. The issuance of one was a mere gratuity. The department acted under the misconstruction of the code in making the interpretation that section 7 had no application to the situation. Here, then, was a permit issued without sanction of the ordinance and under a misconstruction of it. The department files this bill under the authority given to it by section 7 of article 2, in which it is given power to 'apply to any court of competent jurisdiction to restrain any person from such disobedience [as is here involved] notwithstanding such disobedience may be punishable by fine or imprisonment.'

"The violation of article 7 of section 31 was brought to the attention of the complainant some time before September 25, 1913. It was brought to the attention of these defendants, surely, upon October 10, 1913, if not before. Upon this last-named date they received a written notice from the complainant, advising them that further continuance of the work must be done at their own peril.

"What, then, is the situation of the defendants? They procured a permit which had no legal status,

since no such authorization is warranted by the ordinance. The defendants must be held to have had notice of this. All persons dealing with municipalities and their agents act with constructive, if not actual, knowledge of the limitations upon the delegated powers of cities and their instrumentalities. The defendants took nothing with their permit. It was an extralegal instrument. Of itself, it was without efficacy.

"The complainant concededly did allow the defendants to proceed with the building until the formal order of revocation was made. Does this operate to estop it herein? In discussing this question, the conduct of the defendants must be considered.

"By the terms of section 2 of article 31 they were required to comply with the terms of the building code. By section 8 of article 3 it is made unlawful to alter or modify the plans approved by the department. Any alteration may be made only after written application therefor is presented in writing, and written approval obtained. Section 9, art. 3. The defendants have wilfully disregarded these important provisions. Furthermore, they had notice, as has already been stated, as early as October 10, 1913, and probably earlier, that this building, as approved, was in contravention of the ordinance.

"Keeping these facts in mind, what is to be said of the claim of estoppel? It is the position of the complainant that estoppel cannot be interposed to deprive the city of the beneficial enforcement of the ordinance. It is contended that a ministerial board, such as the complainant, cannot by such conduct as is here shown foreclose compliance with the ordinance. In my view, it is not necessary to pass upon that contention, for it is beside the facts of this case.

"The facts which call for the application of a principle are these: There was consent by the complainant to the erection of an unlawful building. There was notice while work was in progress to the defendants that their plan was unlawful, and some continuation of the work by them after such notice. They themselves disregarded the obligation of the ordinance by building, without consent, a structure different from the one for which they obtained approval.

They failed to comply with the valid order of the board with respect to the rear porches.

"In my judgment, they are not in a position to invoke the doctrine of equitable estoppel, even though, under other circumstances, where entire good faith upon the part of those making it is shown, it be available as against a municipality in an analogous situation.

"A decree may be taken dismissing the cross-bill and granting the relief sought in the bill."

The decree is affirmed, with costs to the complainant.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.