STATE OF MICHIGAN
COURT OF APPEALS

PLEASANTON TOWNSHIP,

        Plaintiff/Counter-Defendant-
        Appellant,

v

DOUGLAS PARRAMORE,

        Defendant/Counter-Plaintiff-
        Appellee.

UNPUBLISHED
December 18, 2014

No. 317908
Manistee Circuit Court
LC No. 12-014762-CZ

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

In this zoning dispute, plaintiff, Pleasanton Township, appeals by right the trial court's order granting summary disposition in favor of defendant, Douglas Parramore. For the reasons explained below, we affirm in part, reverse in part, and remand for entry of summary disposition in the Township's favor on its nuisance per se claim and on Parramore's equal protection counterclaim.

As a preliminary matter, we note that the Michigan Townships Association argues as an amicus curiae that the trial court lacked subject-matter jurisdiction to grant relief to Parramore because he did not appeal the Zoning Board of Appeals' decisions in the circuit court. A party may raise a challenge to subject-matter jurisdiction at any time and whether a court has jurisdiction is a question of law that this Court reviews de novo. *Davis v Dep't of Corrections*, 251 Mich App 372, 374; 651 NW2d 486 (2002).

A court's subject-matter jurisdiction concerns the types of cases and claims that it has the authority to decide. *In re AMB*, 248 Mich App 144, 166; 640 NW2d 262 (2001). Subject-matter jurisdiction does not involve the court's power to consider a specific case, but rather involves the court's power to hear a class of cases. *Joy v Two-Bit Corp*, 287 Mich 244, 253-254; 283 NW 45 (1938). Michigan's circuit courts have jurisdiction "to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court . . . ." MCL 600.605. "Thus, circuit courts are presumed to have subject-matter jurisdiction unless jurisdiction is expressly prohibited or given to another court by constitution or statute." *In re Wayne Co Treasurer Petition*, 265 Mich App 285, 291; 698 NW2d 879 (2005). "When a court is without jurisdiction of the subject matter, any action with respect to such a

-1-

cause, other than to dismiss it, is absolutely void." *Todd v Dep't of Corrections*, 232 Mich App 623, 628; 591 NW2d 375 (1998).

The Association characterizes the present action as an improper collateral challenge to the Zoning Board's decisions. Under MCL 125.3605 provides that a party aggrieved by a decision of the Zoning Board must appeal to the circuit court for the county in which the property is located. The party must file the appeal within 30 days after the Zoning Board issues its decision in writing or 21 days after it approves the minutes of its decision, whichever comes first. MCL 125.3606(3). "The failure to file a timely claim of appeal deprives the circuit court of jurisdiction to hear the appeal." *Schlega v Detroit Bd of Zoning Appeals*, 147 Mich App 79, 82; 382 NW2d 737 (1985). In this case, Parramore has not collaterally challenged the Zoning Board's decision. Rather, the Township sued Parramore, alleging claims of nuisance per se and fraud, and asking for injunctive relief. And the circuit court has jurisdiction to hear nuisance and fraud claims and to grant injunctive relief. MCL 600.605; *Joy*, 287 Mich at 253-254.

The Township argues the trial court erred in granting summary disposition to Parramore. It contends that the variance granted to Parramore, which allowed him to construct an accessory building that was eight feet into the 10-foot side yard setback[1], was conditioned on a height restriction contained in Parramore's application for a variance. In the application, Parramore represented that the accessory structure would have eight-foot high side walls and would match the height of his single-story house. "This Court reviews de novo a trial court's decision on a motion for summary disposition." *Hackel v Macomb Co Comm*, 298 Mich App 311, 315; 826 NW2d 753 (2012). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

The Zoning Board has the authority to grant variances concerning the construction or alteration of buildings or structures related to dimensional requirements of the zoning ordinance. MCL 125.3604(8). "A variance is permission granted by a board of appeals to disregard a literal enforcement of an ordinance." *Johnson v Bobbie's Party Store*, 189 Mich App 652, 661; 473 NW2d 796 (1991). The Zoning Board may, however, impose conditions on variances. See MCL 125.3604(7); Pleasanton Township Ordinance, Article 96, § 9604(C); *City of Troy v Aslanian*, 170 Mich App 523, 526-529; 428 NW2d 703 (1988).[2] Such conditions must be expressed with enough clarity to inform the applicant of the limitations on the use of the land and to protect nearby owners. *Id*. at 528. Although a nonconforming use is permitted to continue, the Zoning Board need not permit a property owner to alter the quality, intensity, or location of a nonconforming use. *Id*.

---

[1] See Pleasanton Township Ordinance, Article 45, § 4504.D.3

[2] The analysis in *City of Troy* is based in part on zoning statutory provisions that are no longer in effect, but the current version continues to recognize the Zoning Board's authority to condition the grant of a variance. See MCL 125.3604(7).

When it granted the variance at issue, the Zoning Board did not expressly state that the structure must be one story or have walls that were no more than eight feet in height. It did, however, state that its decision to grant the variance was "based on" Parramore's application and site plan. Parramore stated in his application that the height of the accessory structure would match the single-story house siding and roofing and that the sidewalls would be eight feet tall, with a roof pitch to match the house. His contractor's diagram attached to the application also represented that the roof and sides would match the house with "[s]ingle story peaks" that would not block the neighbors' view. By stating that its decision to grant the variance was based on Parramore's application, the Zoning Board expressed with sufficient clarity that Parramore's representations concerning the height of the structure constituted a condition on its decision to grant the variance. This condition was reasonable given that the new structure's square footage was larger than that of the existing garage, which constituted a nonconforming use. *Id.*; see also *Schadewald v Brule*, 225 Mich App 26, 33; 570 NW2d 788 (1997); *Anatra v Zoning Bd of Appeals of Town of Madison*, 307 Conn 728, 747; 59 A3d 772 (2013) (holding that the conditions on a variance are determined by examining "the entire public record, including the variance application, the accompanying plans and exhibits, the minutes or hearing transcript, and the record of decision").[3]

Contrary to Parramore's argument, the subsequent land use permit issued by the Zoning Administrator did not constitute the variance granted by the Zoning Board. The variance decision is reflected in the minutes of the Zoning Board's public meeting at which it voted to grant the variance "based on" Parramore's application. The land use permit was signed by and issued by the Zoning Administrator following the Zoning Board's decision to grant the variance. It is the Zoning Board that has the authority to grant variances and impose conditions on variances. MCL 125.3604(7), (8); *City of Troy*, 170 Mich App at 526-529.

In any event, the land use permit, while containing what the Township characterizes as boilerplate language stating the maximum building height for the district is 35 feet, and stating that the side yard setback was 10 feet, also expressly stated that the zoning permit application and attachments and the variance decision were to be attached to the file copy of the land use permit. This reference to the zoning application and the variance decision effectively incorporated those documents into the land use permit and alerted Parramore that his representations concerning the height of the structure, which were adopted in the variance decision, remained in effect.[4]

This height restriction was further reinforced in the Zoning Board's second decision in September 2011, after Parramore sought a height variance for the 22 ½-foot-tall structure that he already built. The Zoning Board denied Parramore's request noting that he had a variance for a

---

[3] This Court may look to foreign decisions as persuasive authority. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 559 n 38; 705 NW2d 365 (2005).

[4] Further, even if the land use permit issued by the Zoning Administrator could be construed to permit Parramore to build a structure up to 35 feet in height, as more fully explained below, the Zoning Administrator lacked authority to alter the Zoning Board's variance decision.

one-story structure and that permitting a two-story structure to be built two feet from the property line would alter the essential character of the area. The Zoning Board referred to complaints by three neighbors that the two-story structure was obtrusive given its proximity to the property line. The Zoning Board's subsequent decision made clear that it did not approve the structure. Parramore's suggestion that the 22 ½ foot tall building was one story under an ordinance definition ignores the fact that the Zoning Board's initial grant of a variance was premised on Parramore's application, which contained representations that the *height* of the building would be eight feet tall, and ignores the fact that the Zoning Board expressly found that the 22 ½ foot tall structure would alter the essential character of the area. Thus, Parramore's claim that the Zoning Board did not impose a height restriction in its variance lacks merit.

"Except as otherwise provided by law, a use of land or a dwelling, building, or structure, including a tent or recreational vehicle, used, erected, altered, razed, or converted in violation of a zoning ordinance or regulation adopted under this act is a nuisance per se." MCL 125.3407; see also *Shelby Charter Twp v Papesh*, 267 Mich App 92, 96 n 3; 704 NW2d 92 (2005). Parramore's accessory building violated the zoning ordinance as it did not satisfy the height restriction imposed as a condition on the grant of a variance from the side yard setback requirement. Therefore, the Township established that the building constituted a nuisance per se and was entitled to summary disposition on its nuisance claim.

The Township next argues that even if the Zoning Administrator verbally told Parramore or his contractor, Charles Iverson, that they could build the accessory structure up to 35 feet in height, or even if the land use permit issued by the Zoning Administrator could be construed to permit construction to that height, such representations are not binding on the Township. Generally, a municipality cannot be estopped from enforcing its zoning ordinances by "the ultra vires acts of its zoning officials." *Grand Haven Twp v Brummel*, 87 Mich App 442, 444-445; 274 NW2d 814 (1978) (citations omitted), citing *Fass v Highland Park*, 326 Mich 19; 39 NW2d 336 (1949). Moreover, every person "is presumed to know the nature and extent of the powers of municipal officers" and this rule applies even "when the ordinance violator acts in good faith, expending money or incurring obligations in reliance upon the official's acts." *Id.*; see also *City of Hillsdale v Hillsdale Iron & Metal Co*, 358 Mich 377, 383-384; 100 NW2d 467 (1960).

In *Fass*, 326 Mich at 21, the plaintiffs received licenses in the years 1945, 1946, and 1947 to sell both dressed and live poultry on their property, but in 1948 a license was denied on the ground that a zoning ordinance prohibited the sale of live poultry. The plaintiffs claimed that the defendant-city was estopped from enforcing the zoning ordinance because of the interpretation placed on the ordinance in past years by certain city officials. *Id*. at 25. The plaintiffs claimed that they had purchased the property in reliance on statements of the city engineer indicating that the city did not oppose using the property as a retail live poultry market, and that the plaintiffs invested money in equipment and fixtures and would suffer loss in the value of their property if they could not carry on the business of selling live poultry. *Id*. at 25-26. After reviewing case law, our Supreme Court rejected the plaintiffs' estoppel argument:

> Plaintiffs' claim that the defendant municipality is estopped to enforce its zoning ordinance against plaintiffs' property because of the improper issuance of the building permit and of the licenses for the years 1945, 1946, and 1947, is not tenable. At the time such acts were performed plaintiffs were charged with

knowledge of the restrictive provisions of the ordinance as applied to property in a "B2" district. Such acts being unauthorized and in express contravention of ordinance provisions of the city, plaintiffs acquired no vested right to use their property for a purpose forbidden by law. No claim is made that the building erected by plaintiffs, or the equipment therein, cannot be utilized for the transaction of a permissible business. The sole question at issue is the right of plaintiffs to sell live poultry as a part of their operations. The trial judge was correct in holding that they did not have such right and in consequence were not entitled to the relief sought by them. [*Id*. at 30-31.]

Similarly, in *Mazo v Detroit*, 9 Mich App 354, 357; 156 NW2d 155 (1968), the plaintiff obtained from the Detroit department of buildings and safety engineering a written approval of her request to establish a bar on her property. The Detroit police department likewise approved the plaintiff's request to transfer her liquor licenses to the property in question. *Id*. at 358. Later, however, the Detroit department of buildings and safety engineering refused the plaintiff's request for a building permit to make alterations and withdrew its earlier approval of zoning status, after realizing that the plaintiff's proposed use of the property was prohibited by a zoning ordinance. *Id*. The plaintiff petitioned the Detroit common council for a waiver of the ordinance provision. *Id*. at 359. The Detroit common council denied the plaintiff's petition. *Id*. at 360. The trial court found that it was inequitable to deny the plaintiff a waiver because she had incurred detriment in reliance on approvals given by city officials. *Id*. This Court concluded that the trial court had erred, noting that "nonestoppel of municipalities in the enforcement of zoning ordinances is the rule in Michigan." *Id*.

This Court relied on the reasoning in *Fass* and explained that the plaintiffs must "be charged with at least constructive knowledge of the zoning ordinance provision requiring a waiver by the common council. Neither the department of buildings nor the police department could exercise the authority vested in the common council." *Id*. at 362-363. The Court further held that all persons dealing with municipalities and their agents act with constructive, if not actual, knowledge of the limitations on the agents' powers and, when an agent acts outside his or her authority, the acts are extralegal and without efficacy. *Mazo*, 9 Mich App at 363, quoting *Fass*, 326 Mich at 27, quoting *Detroit Bldg Comm v Kunin*, 181 Mich 604, 612-613; 148 NW 207 (1914).

In this case, Parramore averred that the Zoning Administrator told Iverson in March 2011 that the accessory structure could be built to any height Parramore desired as long it was within the maximum building height limit of 35 feet, and Parramore stated that construction then began in April or May of 2011. The Zoning Administrator averred that she never told Iverson he could build as high as 35 feet, as she knew that the Zoning Board had approved the variance from the 10 foot side yard setback requirement on the basis of Iverson's proposed structure with eight foot high walls and a roof peak to match that of the single story home on the property. Parramore contends that the Zoning Administrator's purported verbal statements to Iverson granting permission to build to any height was consistent with the language on the land use permit, which reflected a 35-foot maximum height.

As discussed, the land use permit explicitly referenced the zoning variance decision and Parramore's application. The variance decision was explicitly based on Parramore's variance application, which represented that the sidewalls would be eight feet high and that the siding and roof would match the height of the single-story home on the property. Nonetheless, even accepting Parramore's characterization of the land use permit as approving a height up to 35 feet and his claim that the Zoning Administrator made similar verbal comments to Iverson, the fact remains that the Zoning Administrator lacked the authority to modify or waive the height restriction that was imposed as a condition for granting the variance from the side yard setback requirement. The Zoning Board alone was authorized to grant variances and to impose conditions on variances. MCL 125.3604(7), (8); Pleasanton Township Ordinance, Article 96, § 9604(C). The Zoning Administrator possessed no authority to waive or modify the conditions imposed by the Zoning Board when granting a variance. Therefore, even if the Zoning Administrator gave Iverson permission to build up to 35 feet, that permission lacked any legal effect. *Mazo*, 9 Mich App at 363. The Zoning Administrator could not exercise the authority vested in the Zoning Board. *Id*. at 362-363. Parramore was further presumed to know the nature and extent of the powers of the Township's officers. *Grand Haven Twp*, 87 Mich App at 444. The Township, therefore, cannot be estopped on the basis of the Zoning Administrator's alleged verbal statements or the land use permit issued by the Zoning Administrator from enforcing the zoning ordinance or the condition imposed by the Zoning Board on the variance.

The Township next contends that Parramore is estopped from asserting a right to build a taller structure than what he represented he would build in his variance application.

A party who has accepted and retained the advantages of a variance that was granted on condition will be deemed to have waived any error with respect to that condition. *City of Troy*, 170 Mich App at 530, quoting 101A CJS, Zoning & Land Planning, § 238, p 691; see also *Johnson*, 189 Mich App at 662 ("[W]here an applicant accepts a variance with a condition which was an indispensable component of the approval and which was treated by all parties at that time as being a valid limitation, the condition is binding on the applicant, who enjoyed the benefits which flowed from the variance."). As discussed, the Zoning Board's decision to grant a side yard setback variance "based on" Parramore's application, which represented that the height of the sidewalls would be eight feet and that the siding and roof heights would match that of his house, imposed a height restriction that comprised a condition of the variance. Parramore did not appeal the Zoning Board's decision or otherwise challenge the height restriction until after constructing a 22 ½ foot structure two feet from the property line and then seeking approval for the height after the fact, which the Zoning Board promptly denied. Parramore did not appeal the Zoning Board's second decision and his contractor initially submitted plans to the Zoning Administrator suggesting that he was going to remove the second story and lower the structure to nine feet in height, but ultimately refused to do so. Therefore, the facts establish that Parramore was granted a variance to build eight feet into a 10 foot side yard setback conditioned on a height restriction and accepted the advantages of the variance by building his structure, but did not comply with the condition on the grant of the variance. Accordingly, Parramore is estopped from challenging the propriety of the condition and it is binding on him. *City of Troy*, 170 Mich App at 530.

-6-

The Township also contends that Parramore is also estopped under a fraud theory, but cites no authority to support this aspect of its argument. "A party cannot simply announce a position and expect the court to search for authority to sustain or reject that position." *Hodge v Parks*, 303 Mich App 552, 557; 844 NW2d 189 (2014). Moreover, the Township has failed to establish that the trial court erred in dismissing its fraud claim. The Township alleged that the original variance decision was null and void because it was obtained fraudulently, and, therefore, it was entitled to have the *entire* accessory structure torn down. To establish a valid claim for fraud, the Township had to show:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. [*Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012).]

General allegations or mere speculation are insufficient to establish fraud. *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 586; 543 NW2d 42 (1995). Fraud must be proved by clear, satisfactory, and convincing evidence. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008). A future promise is contractual and does not constitute fraud unless the promise was made in bad faith without the present intention to perform. *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336-338; 247 NW2d 813 (1976).

Although Parramore, through Iverson, stated in his original variance application that he planned to build a structure with eight foot high sidewalls and wall heights to match the house, and he later built a structure that was more than twice that high, the Township cites no evidence that he made the representations regarding his building plans in bad faith without the present intention to perform. The Township also fails to address the possibility that Parramore made the representations in the variance application in good faith with the present intention to perform but later changed his building plans. Accordingly, in addition to its failure to cite pertinent authority regarding the fraud claim, the Township failed to present evidence to establish all of the elements necessary to establish fraud.[5]

The trial court did not err when it dismissed the Township's fraud claim.

Next, the Township contends that it is also entitled to relief under the doctrine of judicial estoppel. "The doctrine of judicial estoppel prevents a party who has successfully and unequivocally asserted a position in a prior proceeding from asserting an inconsistent one at a subsequent proceeding." *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 474; 556 NW2d 517 (1996). Michigan follows the prior success model of the doctrine. *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 737; 761 NW2d 454 (2008). Under that model, "the mere

---

[5] Although the trial court did not dismiss the fraud claim on this basis, this Court will affirm the trial court's decision when it reaches the correct result regardless of the reason. *Zimmerman v Owens*, 221 Mich App 259, 264; 561 NW2d 475 (1997).

assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent." *Paschke v Retool Indus*, 445 Mich 502, 510; 519 NW2d 441 (1994).

In asserting the applicability of judicial estoppel, the Township conflates Parramore's factual representations concerning the height of the building in his original variance application with a legal position that those representations concerning the height of the building comprised a condition of the variance. However, although Parramore represented in his variance application that the accessory structure would have eight foot high sidewalls, he did not take a position in that proceeding that the height of the building was a condition of the variance. Although we concluded earlier that the Zoning Board's grant of the variance "based on" Parramore's application rendered his representations regarding the height of the structure a condition of the variance, Parramore did not unequivocally assert a position in the Zoning Board that the height of the structure was a condition of the variance. Therefore, he has not asserted wholly inconsistent positions on that question. Accordingly, the Township has failed to establish that the doctrine of judicial estoppel applies in this case.

Finally, the Township argues that it is entitled to summary disposition with respect to Parramore's equal protection counterclaim. Generally, an issue must have been addressed and decided by the trial court to be preserved for appellate review. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). The Township raised this issue in its motion for summary disposition, but the trial court refused to address it. In its order, the court stated that it was neither granting nor denying the Township's motion for summary disposition on the counterclaim because it was not necessary to decide the counterclaim. Nonetheless, this Court may reach an issue that was raised below even if the trial court failed to address and decide it, because a party should not be punished for the trial court's omission. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Therefore, we will address the issue.[6] This Court reviews de novo constitutional issues such as whether a party was denied equal protection under the law. *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013).

Under the federal and Michigan constitutions, similarly situated persons must be treated equally. In a zoning context, the first question has to be whether the variance applicant demonstrated on the record that it was treated differently from some similarly situated applicant. However, unless the dissimilar treatment alleged impinges on the exercise of a fundamental right or targets such protected classifications as those based on race or gender, the challenged regulatory scheme will survive equal protection analysis if it is rationally related to a legitimate governmental interest. The party raising the equal protection challenge has the burden of proving that the challenged law is arbitrary and thus irrational. *Risko v*

---

[6] At oral arguments Parramore's lawyer conceded that he had abandoned this claim. Nevertheless, we elect to address the issue in the interests of finality.

*Grand Haven Charter Twp Zoning Bd of Appeals*, 284 Mich App 453, 465; 773
NW2d 730 (2009) (quotation marks, brackets, and citations omitted).]

Parramore failed to demonstrate that he was treated differently from a similarly situated applicant. He alleged in his counterclaim that three other property owners in the zoning district were permitted to construct two-story accessory buildings. Thus, Parramore contended, the Township was enforcing the zoning ordinances against him but not against similarly situated property owners in the same zoning district. In seeking dismissal of the counterclaim, the Township attached to its motion for summary disposition an affidavit of the Zoning Administrator. The Zoning Administrator averred that the cases cited by Parramore each involved structures that were "built within the normal building envelope (where a 35' height is permitted) on their lots and none of them were built in a setback area where no construction is permitted without a variance . . . ." Parramore did not file a response to the motion for summary disposition and presented no evidence to contradict the Zoning Administrator's affidavit. Therefore, because Parramore's 22 ½ foot building was built in a setback area, within two feet of the property line, the other property owners who built two-story accessory structures in the normal building envelope were not similarly situated to him. Parramore thus has not presented evidence that he was treated differently from some similarly situated applicant.

We also note that the right to build according to a preferred design is not a substantial property right. *Id*. at 463-464. Local governmental units possess broad authority to establish requirements regarding matters such as the height of structures and setback regulations. *Id*. at 463, citing MCL 125.3201. See also *McClain v City of Hazel Park*, 357 Mich 459, 461; 98 NW2d 560 (1959) (noting that setback requirements in residential areas have long been held constitutional when provided by ordinance); *Sisters of Bon Secours Hosp v City of Grosse Pointe*, 8 Mich App 342, 360-361; 154 NW2d 644 (1967) ("The concept of building height restrictions is virtually universally accepted as bearing a substantial relation to public health, safety, morals and welfare."). Therefore, the setback requirement and the height restriction imposed as a condition of the variance from the setback requirement are rationally related to a legitimate governmental interest. Parramore failed to establish that the Township's ordinances were arbitrary or irrational or disparately applied.

Affirmed in part, reversed in part, and remanded for entry of summary disposition in favor of the Township on its nuisance per se claim and on Parramore's equal protection counterclaim. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter