RISKO v GRAND HAVEN CHARTER TOWNSHIP
ZONING BOARD OF APPEALS

Docket No. 282701. Submitted June 1, 2009, at Grand Rapids. Decided June 16, 2009, at 9:05 a.m.

Michael P. and Rebecca J. Risko petitioned the Ottawa Circuit Court for judicial review of a decision by the Grand Haven Charter Township Zoning Board of Appeals to deny the Riskos' application for a zoning variance that would allow them to build a residence with a garage that will not meet a setback requirement of the township's zoning ordinance. The court, Jon A. Van Allsburg, J., reversed the board's decision. The board appealed by leave granted.

The Court of Appeals *held*:

1. The township's zoning ordinance requires the board, when faced with an application for a zoning variance, to consider, among other things, whether the variance is necessary for the preservation and enjoyment of a substantial property right similar to that possessed for other properties in the same zoning district. The evidence in this case indicates that a zoning variance is not necessary because a garage that complies with the setback requirement can be built, although its design may be less preferable to the Riskos and additional cost would be incurred. "Substantial property right," as used in the ordinance, means the right to possess, use, and enjoy the valuable and important aspects of one's land, but does not encompass the right to build according to a preferred design. The board appropriately considered whether petitioners' substantial property right in building a garage could be honored without granting a variance and correctly denied a variance.

2. The record evidence does not support the Riskos' claim that they were treated differently from other similarly situated residents who were granted variances. Even if the Riskos were treated differently, they have not shown that the board's consideration of alternative designs was arbitrary and did not advance a legitimate governmental interest grounded in concerns for health, safety, and welfare.

Reversed.

1. Zoning — Variances — Substantial Property Rights.

"Substantial property right," as used in a zoning ordinance that requires a zoning board of appeals faced with a variance application to consider whether the variance is necessary for the preservation and enjoyment of a substantial property right similar to that possessed for other properties in the same zoning district, includes the right to possess, use, and enjoy the valuable and important aspects of one's land, but subject to land use regulations that advance governmental interests.

2. Constitutional Law — Equal Protection.

State and federal constitutional guarantees of equal protection mandate that persons in similar circumstances be treated similarly; however, unless the dissimilar treatment alleged impinges on the exercise of a fundamental right or targets such protected classifications as those based on race or gender, the challenged regulatory scheme will survive equal protection analysis if it is related to a legitimate governmental interest.

*Rhoades McKee PC* (by *Gregory G. Timmer*) and *Bolhouse, Vander Hulst, Risko & Baar, PC* (by *Joel W. Barr*), for the petitioners.

*Scholten Fant* (by *Bruce P. Rissi*) for the respondent.

Before: BECKERING, P.J., and WILDER and DAVIS, JJ.

DAVIS, J. Respondent, Grand Haven Charter Township Zoning Board of Appeals (the Board), appeals by leave granted the trial court's order reversing the Board's denial of petitioners' application for a nonuse variance. We reverse.

Petitioners seek to construct a single-family residence on a lot in Grand Haven Charter Township (the Township). The Township zoning ordinance at issue requires a 50-foot setback. The lot is zoned R-1 residential, is 2.46 acres in size, and is 525 feet wide and 189.25 feet deep. However, it is located in a "critical dune zone" and only a portion of it is actually buildable. Petitioners commissioned architectural plans for which they ob-

tained the approval of the Michigan Department of Environmental Quality (MDEQ). Those plans included an attached, two-stall garage that would encroach onto the 50-foot setback area by 9.5 feet. Petitioners applied for a variance from the zoning setback requirement. Petitioners' application stated that the encroachment was necessary because the critical dunes in the rear lot area forced part of the structure to be moved closer to the property line.

Section 26.05 of the Township zoning ordinance provides standards for use by the Board in determining whether an applicant's variance should be granted. The section states:

> 1. Except as otherwise provided, to authorize a non-use or dimensional variances from the strict applications of the provisions of this Ordinance, the Zoning Board of Appeals shall apply the following standards and shall make an affirmative finding as to each of the matters set forth in each of such standards:

> A. That there are exceptional or extraordinary circumstances or conditions applying to the property that do not apply generally to other properties in the same zoning classification. . . .

> B. That such variance is necessary for the preservation and enjoyment of a substantial property right similar to that possessed by other properties in the same zoning district and in the vicinity, provided that possible increased financial return shall not of itself, be deemed sufficient to warrant a variance.

> C. That authorization of such variance will not be of substantial detriment to adjacent property, and will not materially impair the intent and purpose of this Ordinance or the public health, safety, and general welfare of the community.

> D. That the condition or situation of the specific piece of property or the intended use of said property for which the variance is sought, is not of so general or recurrent a

nature as to make reasonably practical the formulation of a general regulation for such condition or situation, a part of this Ordinance.

The parties agree that petitioners' application satisfied the third and fourth standards in this section, and those standards are not at issue in this appeal. Petitioners claimed that the first two standards were met because exceptional and extraordinary circumstances were present on the lot at issue because of the protected sand dunes and the need for a special MDEQ permit. Further, petitioners claimed that the variance was necessary to preserve the enjoyment of a substantial property right (use of a two-car garage) that others in the zoning area enjoyed.

Patrick B. Waterman, Grand Haven Township Director of Community Development,[1] wrote a memorandum to the Board recommending approval of petitioners' request for a variance. At the Board meeting to address the variance request, several residents expressed objections to the proposed variance. Petitioners stated that, if the Board rejected the variance, they would have to wait for another MDEQ approval and obtain a new architectural design. The Board reached its decision as described in the minutes:

> After much deliberation, the board determined that although there were in fact unique circumstances applicable to this property (*i.e. the excessive dune slopes in the rear yard and the MDEQ building restrictions*), they felt that the owner had alternate design options which would enable him to construct a new home and attached garage without the need for a variance. Specifically, it was determined that there appeared to be adequate room to construct a side-loading garage, which would eliminate the

[1] Mr. Waterman's title is not apparent from the lower court record, but his title is mentioned in both petitioners' and respondent's briefs on appeal.

> front yard encroachment. The alternate design options
> were available to the owner because the lot was exception-
> ally wide when compared to a typical R1 lot, which elimi-
> nated the probability of any side yard encroachments. It
> was on this basis that the board believed the request failed
> to meet the four variance standards. [Emphasis in origi-
> nal.]

Specifically, the Board voted that petitioners had failed
to meet standards 1 and 2 of the zoning ordinance set
forth above. However, in the trial court, respondent
conceded that its sole basis for ultimately denying the
variance application was that petitioners could change
their proposed design to relocate the garage so that a
variance was unnecessary. It appears from the minutes
that respondent found the first standard to be met.

On appeal to the circuit court, petitioners argued
that changing their plans would require significant
additional expense and delay. Furthermore, petitioners
argued that the Board's decision amounted to the
imposition of a fifth standard with no support in any
law: that no alternative design existed that would not
require the variance. Petitioners also pointed out other
instances of variance applications being granted with
no consideration of the possibility of alternative de-
signs, and they argued that this amounted to an abuse
of discretion because standards were not being applied
uniformly. Respondent did not dispute that petitioners
had a substantial property right to a two-stall garage on
property zoned as residential, but argued that petition-
ers did not have a right to any particular, specific design
or location thereof.

The circuit court reversed the Board's decision from
the bench and held:

> The evaluation whether these factors were met for
> purposes of determining whether there exists a practical

difficulty in complying with the zoning ordinance *does appear to add a requirement by the zoning board to evaluate alternate possibilities or other suitable locations for the portion of the home that extended into the front yard setback. That's not a [proper] consideration* in the cases that involve these issues. [Emphasis added.]

The circuit court continued:

In this case, the zoning board appeared to specifically rely upon the fact that there was a wider building envelope and that the applicant could go back and redesign the house and resubmit the redesign for MDEQ approval and build within the existing envelope without violating any setback requirements. However, the result of the zoning board's decision here to require potentially a resurvey, redesign by an architect, resubmission to MDEQ with the cost associated with each stage of that process and the delay required by each stage of that process *does impose practical difficulties.* [Emphasis added.]

The circuit court also held that the Board had not reasonably exercised its discretion because it had applied the zoning ordinance unequally to similarly situated variance applicants.

This Court reviews de novo the circuit court's decision in an appeal from a zoning board, "while giving great deference to the trial court and zoning board's findings." *Norman Corp v City of East Tawas*, 263 Mich App 194, 198; 687 NW2d 861 (2004). When reviewing a zoning board's denial of a variance "this Court must review the record and ... [the board's decision] ... to determine whether it (1) comports with the law, (2) was the product of proper procedure, (3) was supported by competent, material, and substantial evidence on the record, and (4) was a proper exercise of reasonable discretion." *Id.* at 202, citing MCL 125.585(11) (now repealed and replaced by MCL 125.3606[1]). "The interpretation of a zoning ordinance presents a question

of law subject to review de novo." *Brandon Charter Twp v Tippett*, 241 Mich App 417, 427; 616 NW2d 243 (2000). Constitutional questions involving equal protection claims are reviewed de novo by this Court. See *Houdek v Centerville Twp*, 276 Mich App 568, 573; 741 NW2d 587 (2007).

As we alluded to earlier, we reject respondent's argument that its denial was based in part on the first standard, that the petitioners' case did not present exceptional or extraordinary circumstances. The minutes of the Board meeting and respondent's own concessions contradict such an argument. We conclude that the Board's decision to deny the variance request was based on a finding that petitioners could enjoy their right to a home with a two-stall garage on their property without obtaining a variance. We decline to consider any argument by respondent that petitioners' hardship is self-inflicted because, although one Board member did discuss that likelihood, the minutes reflect that self-imposed hardship was not a basis for its denial of the variance. The sole issue is whether, under the circumstances, the 9.5-foot setback "variance is necessary for the preservation and enjoyment of a substantial property right similar to that possessed by other properties in the same zoning district."

Significantly, petitioners did not refute the Board's finding that petitioners' property would accommodate an MDEQ-approved home with a two-stall garage without needing the variance. The evidence indicates that doing so would require additional expense, delay, and hassle; furthermore, doing so would result in a less-preferable design. Pursuant to respondent's own admissions, the Board would be required to issue the requested variance if petitioners could prove that it would be impossible without the variance to construct an

MDEQ-approved home with a two-car garage. But on the record before us, it appears that doing so would indeed be possible.

We are unpersuaded that this inquiry imposes an additional requirement: something can only be *necessary* to achieving a goal if there is no realistic or practical alternative way to achieve that goal. Resolution of this matter depends on whether a "substantial property right" includes construction of a particular design. We conclude that it does not.

"[U]nless explicitly defined in a statute, 'every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.'" *Yudashkin v Holden,* 247 Mich App 642, 650; 637 NW2d 257 (2001) (citation omitted). The term "substantial property right" is undefined in the ordinance, and it has not been defined in this context by Michigan caselaw. Because undefined terms must be given their plain and ordinary meanings, it is proper to consult a dictionary to define terms. *Robinson v Ford Motor Co,* 277 Mich App 146, 152; 744 NW2d 363 (2007). Black's Law Dictionary (8th ed) defines "property" as "[t]he right to possess, use, and enjoy a determinate thing ( . . . a tract of land . . .); "property right" is defined as "[a] right to specific property, whether tangible or intangible;" and "right" is defined in relevant part as "[s]omething that is due to a person . . . [a] power, privilege, or immunity secured to a person by law." *Random House Webster's College Dictionary* (1997) defines "substantial" in relevant part as "of real worth, value, or effect." Applying these definitions, "substantial property right" is reasonably defined in plain, ordinary language as the right or privilege to possess, use, and enjoy the aspects of one's land that are of considerable value and importance.

Because this analysis remains somewhat nebulous, we find that judicial construction of the phrase "substantial property right" is necessary to resolve the ambiguity. See *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). Several cases in Michigan have discussed what constitutes a "substantial property right" in other contexts. In *Forster v City of Pontiac*, 56 Mich App 415, 417, 420; 224 NW2d 325 (1974), this Court found that property owners were deprived of a "substantial right," warranting eminent domain proceedings, when the city vacated an alley that abutted the property owners' business, explaining that "the vacation of said alley prevents plaintiffs from ingress or egress to the rear portion of their said property and that the vacation of said alley by defendant . . . caused a material diminution in the value of plaintiffs' property." *Id.* at 421 (quotation marks omitted). In *Indian Village Ass'n v Barton*, 312 Mich 541, 549; 20 NW2d 304 (1945), our Supreme Court, quoting *Allen v Detroit*, 167 Mich 464, 469; 133 NW 317 (1911), held that restrictive covenants "upon the use of property by reason of a general plan . . . [constitute] 'a substantial property right which the owners can maintain and enforce.' " Our Supreme Court in *Allen* explained:

> Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and a property right of value, which cannot be taken for the public use without due process of law and compensation therefor; the validity of such restriction not being affected by the character of the parties in interest. [*Allen*, 167 Mich at 473.]

In addition to covenants and restrictions, our Supreme Court has stated that the right to exclude others from one's property is an "essential" protected property right. *Woodland v Michigan Citizens Lobby*, 423 Mich 188, 247; 378 NW2d 337 (1985), citing *Kaiser Aetna v United States*, 444 US 164, 179-180; 100 S Ct 383; 62 L Ed 2d 332 (1979).

In a case outside this jurisdiction, the Wisconsin Supreme Court cited *Allen*, 167 Mich at 473, in holding riparian rights reserved by an agreement constitute substantial property rights. *Bino v City of Hurley*, 273 Wis 10, 19-21; 76 NW2d 571(1956). In another case outside this jurisdiction, the Tennessee Supreme Court described disputes over "boundaries, plats and surveys" as affecting "very substantial" property rights. *Chapdelaine v Tennessee State Bd of Examiners for Land Surveyors*, 541 SW2d 786, 788 (Tenn, 1976). Substantial property rights, in sum, have included the right to use the property without loss of value, the right to access the property, restrictive covenants or building restrictions that run with the land, rights of exclusion, riparian rights, and boundaries, plats, and surveys. All of the above examples involve fundamental rights attendant to the use of the land.

The phrase "substantial property rights" is used in the context of land use regulation in this case. *Yudashkin*, 247 Mich App at 650. A local governmental entity in Michigan has authority to regulate land use pursuant to the police power reserved to the states and delegated to local governments by the Legislature. See *Detroit Edison Co v Richmond Twp*, 150 Mich App 40, 47-49; 388 NW2d 296 (1986); *Sun Communities v Leroy Twp*, 241 Mich App 665, 669; 617 NW2d 42 (2000); MCL 125.3101 *et seq.* This authority is extensive, and a regulation will generally surpass constitutional muster if there is a reasonable governmental interest being advanced that is not purely arbitrary, capricious, or unfounded. See *Houdek*, 276 Mich App at 582. See also *Burt Twp v Dept of Natural Resources*, 459 Mich 659; 593 NW2d 534 (1999) (noting that, under the former township enabling legislation, municipalities had extensive authority to regulate the use and development of land). This Court has held that protecting aesthetic

value is a legitimate governmental purpose. *Norman Corp*, 263 Mich App at 201, citing *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 572; 398 NW2d 393 (1986). The language of the current zoning enabling act illustrates this broad authority and authorizes local governments to establish requirements for things such as maximum or minimum square footage, setback, height, and the like. See MCL 125.3201.

Thus, fundamental uses or rights attendant to the land are statutorily subject to regulation. Our Supreme Court has stated that local ordinances ordinarily take full advantage of the broad authority granted by enabling legislation "[t]o accommodate changing needs and expectations, zoning ordinances typically are worded so as to confer broad discretion on zoning boards . . . ." *Macenas v Village of Michiana*, 433 Mich 380, 389; 446 NW2d 102 (1989). The broad authority of a local government to regulate land use through zoning suggests that the phrase "substantial property right" should be construed narrowly. See *Norman Corp*, 263 Mich App at 201; *Houdek, supra*; *Burt Twp, supra*; *Macenas*, 433 Mich at 389. It should include the right to possess, use, and enjoy the valuable and important aspects of one's land, but subject to land use regulations that advance legitimate governmental interests.

In sum, we conclude that the phrase "substantial property right," as used in the ordinance, encompasses the right to build a garage on property regulated for residential use, but does not encompass the right to build according to a preferred design.

The right to build according to one's preferred design is unlike the "substantial property right" recognized by this Court in *Forster, supra*. The right of ingress and egress to one's property is a substantial right in that it was necessary for access to and use of the property

itself, whereas a preferred design does not deny access, use, or the ability to construct a residence in compliance with the zoning requirements. In addition, in contrast to *Forster*, where restricted ingress and egress caused a diminution in value, here the inability to build a preferred design would not result in a similar decline in value because a residential structure and garage can still be built in compliance with the ordinance. Similarly, the right to build to a preferred design is unlike the substantial property right to enforce restrictive covenants as recognized in *Indian Village*, 312 Mich at 549, and *Allen, supra*. Unlike a restrictive covenant, the right to a particular design is not similar to an easement; it does not run with the land. See *Allen*, 167 Mich at 473. Furthermore, the right to a preferred design is dissimilar to the right to exclude others from one's property, which is an essential part of land ownership. *Woodland, supra*; *Kaiser Aetna*, 444 US at 179-180. Finally, the right to build to a preferred design is unlike riparian rights, which allow for reasonable use of a natural resource, and the right to accurate surveys and boundaries, which are essential to the determination of the extent of land to which a person holds legal title. *Bino*, 273 Wis at 19-21; *Chapdelaine*, 541 SW2d at 788.

We conclude that the right to a preferred design is not a "substantial property right"; therefore, it was proper for the Board to consider whether petitioners had alternative designs available that negated the need for the variance. In other words, it was appropriate to consider whether petitioners' substantial property right in building a garage could be honored without granting the variance.

However, petitioners further argue that the Board applied the zoning ordinance in a discriminatory manner, because it granted setback variances to other

property owners in similar situations. Resolution of this issue requires an analysis of whether petitioners showed on the record that they were treated differently than similarly situated variance applicants. See *Great Lakes Society v Georgetown Charter Township*, 281 Mich App 396, 427; 761 NW2d 371 (2008). Under the federal and Michigan constitutions, similarly situated persons must be treated equally. *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 716-717; 575 NW2d 68 (1997). In a zoning context, "the first question has to be whether [the variance applicant] demonstrated on the record that it was treated differently from some similarly situated [applicant]." *Great Lakes Society*, 281 Mich App at 427, citing *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 336-337; 675 NW2d 271 (2003), vacated 480 Mich 1143 (2008), reaffirmed in part 280 Mich App 449 (2008). "However, unless the dissimilar treatment alleged impinges on the exercise of a fundamental right or targets such protected classifications as those based on race or gender, the challenged regulatory scheme will survive equal protection analysis if it is rationally related to a legitimate governmental interest." *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 73; 592 NW2d 724 (1998). "[T]he party raising the equal protection challenge has the burden of proving that the challenged law is arbitrary and thus irrational." *Id.*, citing *Neal*, 226 Mich App at 719.

We do not find evidence in the record from which we can conclude that petitioners were treated irrationally and differently from other similarly situated residents who had been granted a nonuse variance. The only stipulated example was another resident who, it appears, had an unusually narrow lot and was seeking to construct a new shed to replace an old shed that had been nonconforming and where a concrete pad and

electricity were already in place at the location of the old shed, and there was some indication that the shed really could not be put elsewhere without reducing its size. We do not find sufficient similarity in the situations. In other cases petitioners discussed in the circuit court, we likewise do not find sufficient similarities. One of them involved a lot burdened by a drainage easement and the available alternative design apparently would have necessitated a smaller, rather than a relocated, garage. Another involved "severely limited" buildable area and no suggestion that alternative designs would be available. The third involved a residence that already encroached onto a setback and, again, nothing to indicate that an alternative to the proposed deck addition might have been available. In any event, even if petitioners were treated differently than similarly situated applicants, petitioners have not shown that the Board's consideration of alternative designs when implementing the zoning ordinance is arbitrary and does not advance a legitimate governmental interest grounded in the "ordinary concerns for health, safety, and welfare" and therefore not "rationally related to a legitimate governmental interest." *Dowerk*, 233 Mich App 73.

In sum, we find that the Board's decision to deny petitioners' application for the 9.5 foot setback variance on the ground that the variance was not "necessary for the preservation and enjoyment of a substantial property right similar to that possessed by other properties in the same zoning district" comported with the law, was procedurally proper, was supported by the evidence, and was not irrational.

Reversed.