# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID HOFFMAN,

        Plaintiff-Appellant,

v

PORTER TOWNSHIP,

        Defendant-Appellee.

UNPUBLISHED
April 21, 2015

No. 319409
Cass Circuit Court
LC No. 12-000489-AV

Before: METER, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the circuit court's order affirming the decision of defendant's Zoning Board of Appeals ("the ZBA") to deny plaintiff's request for a variance and dismissing plaintiff's constitutional claims. For the reasons stated below, we vacate in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff owns a small island[1] on Shavehead Lake in Porter Township. Plaintiff desires to construct a 2,348 square foot home on the island.[2] In pursuit of this desire, plaintiff obtained various permits and authorizations from the Michigan Department of Environmental Quality ("DEQ"), the Cass County Drain Commissioner, and the Michigan Department of Natural Resources ("DNR")[3]. He also sought to determine how the Porter Township Zoning Ordinance applied to his island property.

---

[1] Defendant maintains that the "island" is more properly characterized as a "wetland." For ease of reference, we will for purposes of this opinion use plaintiff's preferred term, "island."

[2] Because of the wetland qualities of the island, plaintiff proposed to build the house entirely on pilings, elevated from the surface of the island, with boardwalks extending to the water's edge.

[3] At the time, the DEQ and the DNR were subsumed within the then-newly-created Michigan Department of Natural Resources and Environment. By Executive Order No. 2011-1, effective March 13, 2011, the DEQ and DNR were again reconstituted as separate principal departments within the executive branch of state government.

-1-

In January 2011, the Township Deputy Zoning Administrator determined that plaintiff's island was "not zoned." However, the Township Planning Commission Chairman appealed that determination to the ZBA. The minutes from a subsequent meeting of the ZBA on March 10, 2011 support that no prior zoning classification had been placed upon the island. In the interest of adhering to the ordinance's intent to zone all property within the township, the ZBA considered what classification should apply to plaintiff's island. In so doing, the ZBA referred to Cass County parcel information for the island, assessment cards for the island, aerial photographs of the island, and the township zoning map. Notably, the zoning map established different colors for different zoning districts: purple denoting "lake residential," light green denoting "parks, campgrounds and recreational areas," and white denoting "agricultural," among others. The ZBA heard evidence that the entire shoreline of Shavehead Lake was zoned purple—i.e., "lake residential"—with the exception of a parcel owned by Camp Freidenswald that was zoned light green—i.e., "parks, campgrounds and recreational areas." According to the zoning map, plaintiff's island appeared to be white—suggesting that it had been zoned "agricultural"—although it was also suggested that the island was merely "non-colored," meaning that it had been given no zoning designation. The ZBA also heard evidence that an "island" created by a manmade channel on the southeastern side of the lake also was designated with a white color and thus similarly appeared to have been zoned "agricultural," although it also may not have been zoned at all. Finally, the ZBA heard evidence that if an island was less than five acres in size, even if it were zoned "agricultural," the zoning standards would default to "rural residential" according to the ordinance. After hearing public comment, the ZBA deliberated. In its deliberations, the ZBA noted that no zoning district would ban outright all construction or development on the island. It further noted that agriculturally-zoned lots on less than five acres defaulted to the "R-1" residential zoning standards, also referred to by the ZBA as "rural residential." The ZBA ultimately voted to reverse the decision of the deputy zoning administrator that the property was not zoned, to determine that the island was zoned, and to interpret the zoning map to determine that the property was zoned "agricultural," subject to the "R-1" zoning standards. Relevant to this appeal, Article 111.804(f) of the ordinance, governing "R-1" zoning districts, contains a requirement that the "minimum lot width at the setback line shall be 100 feet."[4] Although the location of the "setback line" on plaintiff's island is unclear, the island was presumed not to meet this requirement, since the property was only 75 feet wide.[5]

---

[4] A "setback line" is defined in Article 111.1900 of the ordinance (which appears to supply definitions applicable to the ordinance as a whole) as a line "established adjacent and parallel with streets and roads for the purpose of defining limits within which no building or structure or any part thereof shall be erected or permanently maintained." As discussed later in this opinion, the seeming difficulty in applying the defined term, "setback line," to an island property demonstrates the perils of attempting to apply requirements that appear designed for mainland development to an isolated island. Similarly, the ordinance's definitions of the terms "lot," "lot line," "street," "right-of way," as well as the undefined term "road," seem difficult to apply to an island property.

[5] By contrast, Article 111.804(f) of the ordinance provides that "lake residential" property "platted after February 8, 2000 shall be 100 feet at the waterfront." The record before us

On April 5, 2012, plaintiff applied to the ZBA for a variance. A public meeting was held on May 24, 2012. Plaintiff presented his plans for the proposed home and the permits he had obtained. He answered questions from ZBA members, particularly with regard to concerns about emergency access to the island. Members of the community, including some who owned property on the lake, opposed plaintiff's proposal for various reasons, including concerns about obstructed views of the lake and the potential impact of running a sewage line under the lake. At the close of the public hearing, the ZBA voted unanimously to deny the variance request. The ZBA listed four reasons for the denial: (1) the lot width of 75 feet did not meet the ordinance requirement; (2) health and safety issues were unresolved; (3) allowing the variance for lot width would be financially detrimental to neighbors; and (4) neighbors voiced opposition to building on the island.

Plaintiff subsequently appealed the ZBA's decision to the circuit court, and additionally filed a four-count complaint,[6] alleging in Count I that the ZBA's decision was not supported by competent, material, and substantial evidence, and constituted an abuse of discretion. In Count II, plaintiff alleged a substantive due process violation. In Count III, plaintiff alleged an equal protection violation. Finally, in Count IV, plaintiff alleged an unconstitutional taking of his property. The circuit court heard arguments with respect to Count I on November 5, 2012, and on November 27, 2012, issued a written opinion affirming the ZBA. The circuit court concluded that the ZBA's decision was supported by sufficient evidence. In so doing, the court in part rejected plaintiff's contention that a board member's alleged conflict of interest tainted the decision.[7] Subsequently, on October 11, 2013, defendant moved the circuit court for summary disposition on plaintiff's remaining claims. Following a hearing on the motion, the court granted defendant's motion. With respect to the due process and equal protection claims, the court agreed with defendant's contention that it lacked subject matter jurisdiction over those claims,

_____

contains no information regarding whether or when the property in question was platted, or how wide the property would be measured from the waterfront, although the parties agree that the island is 75 feet wide (measured west to east) and it appears from a topographical survey in the record that the island is substantially more than 100 feet long (measured north to south). Article 111.804 of the ordinance also sets forth requirements for the front yard, side yard, rear yard, and minimum lot size of "lake residential" properties, some of which vary depending on when the property was platted. We express no opinion regarding whether plaintiff's island would satisfy the ordinance requirements applicable to a "lake residential" property or a property of any other zoning district.

[6] Pursuant to MCR 7.122(A)(1), the circuit court has jurisdiction over appeals from zoning ordinance determinations, including by a zoning board of appeals. Further, that rule "does not restrict the right of a party to bring a complaint for relief relating to a determination under a zoning ordinance." MCL 7.122(A)(2).

[7] We express no opinion regarding whether the ZBA member in question had a conflict of interest. We take note, however, of the Zoning Board of Appeals Handbook, published by the Michigan Municipal League, which states, "You may also consider the possibility of declaring a conflict of interest if your home falls within a notification radius used by your community for zoning board of appeals' actions." See www.mml.org/pdf/zbabook.pdf, § 17 (accessed March 31, 2015).

and therefore dismissed them under MCR 2.116(C)(4).  With respect to the takings claim, the court agreed that plaintiff had failed to create a genuine issue of fact, and therefore dismissed the claim under MCR 2.116(C)(10).  This appeal followed.

## II.  DUE PROCESS AND EQUAL PROTECTION CLAIMS

Because we find our resolution of plaintiff's due process and equal protection claims to be dispositive, we address them first.  We review constitutional questions de novo.  *Risko v Grand Haven Charter Twp Zoning Bd of Appeals*, 284 Mich App 453, 459; 773 NW2d 730 (2009).

## A.  CIRCUIT COURT'S JURISDICTION

Plaintiff first argues that the circuit court erred in dismissing his due process and equal protection claims pursuant to MCR 2.116(C)(4).  We agree.  Under the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 et seq., administrative decisions of a zoning board of appeals are final, subject to appeal in the circuit court.  MCL 125.3605.  A circuit court does not have jurisdiction to hear an appeal if it is not timely filed.  *Krohn v Saginaw*, 175 Mich App 193, 196; 437 NW2d 260 (1988).  In this case, plaintiff timely appealed the ZBA's May 24, 2012 denial of his variance request to the circuit court within 21 days of the ZBA approving the minutes of its public meeting.  MCL 125.3606(3)(b).  Accordingly, the circuit court had proper subject matter jurisdiction over plaintiff's appeal and related claim contesting the 2012 ZBA decision.  *Krohn*, 175 Mich App at 196-198.

We further hold that the circuit court had proper subject matter jurisdiction over plaintiff's constitutional claims.  Those claims relate in part to the ZBA's May 24, 2012 denial of plaintiff's variance request, and to that extent clearly are also timely.  But they also relate in part to the ZBA's underlying March 10, 2011 decision that plaintiff's island was zoned agricultural, and on that basis defendant contends that the claims were not timely appealed, and that the circuit court thus lacks subject matter jurisdiction.  We disagree.  Based on the record before us, it appears that the 2011 ZBA determination may have been a decision regarding zoning or rezoning, which is legislative, rather than administrative, in nature.  *Sun Communities v Leroy Twp*, 241 Mich App at 665, 669-671; 617 NW2d 42 (2000).[8]  In that event, plaintiff had no duty to appeal that decision.  *Id*. at 672 ("[t]here is no authority that requires a party to pursue an appeal to challenge the constitutionality of a legislative act of rezoning").  In fact, had plaintiff attempted to immediately challenge the ZBA's 2011 decision without first seeking a variance, the challenge would not have been ripe for review.  See *Paragon Prop Co v Novi*, 452 Mich 568,

---

[8] As discussed in this opinion, the record suggests that, by its 2011 decision that the island should be zoned "agricultural," the ZBA may have overstepped its administrative authority and usurped the legislative authority of the township board.  See MCL 125.3201; MCL 125.3202.  On remand, the circuit court should explore the propriety of the 2011 ZBA decision, in light of the deputy zoning administrator's determination that the island had never been zoned, and the apparent absence of any record of any action by the township board, acting in its legislative capacity, to zone the island in the first instance.

579-582 and n. 15; 550 NW2d 772 (1996) ("neither a . . . decision to rezone land nor a [ZBA] decision to grant a variance is relevant to the constitutionality or unconstitutionality of an ordinance's provisions"). Instead, plaintiff would have been confined to first seeking relief in the form of a variance; once that request was denied, "relief in the form of an appeal to the circuit court" was authorized by statute. *Id*. at 581. See MCL 125.3606. Thus, the circuit court erred in dismissing plaintiff's due process and equal protection claims under MCR 2.116(C)(4).[9]

## B. ANALYSIS

To prevail on a substantive due process claim regarding zoning ordinances, the claimant must prove either "(1) that there is no reasonable governmental interest being advanced by the present zoning classification or (2) that an ordinance is unreasonable because of the purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the area in question." *Frericks v Highland Twp*, 228 Mich App 575, 594; 579 NW2d 441 (1998). The zoning classification is presumed to be valid. *Id*.

"The equal protection clauses of the Michigan and United States constitutions provide that no person shall be denied the equal protection of the law." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010), cert den __ US __; 131 S Ct 928; 178 L Ed 2d 752 (2011). See also US Const, Am XIV; Const 1963, art 1, § 2. "The Equal Protection Clause requires that all persons similarly situated be treated alike under the law." *Shepherd Montessori Ctr Milan*, 486 Mich at 318. "[U]nless the dissimilar treatment alleged impinges on the exercise of a fundamental right or targets such protected classifications as those based on race or gender, the challenged regulatory scheme will survive equal protection analysis if it is rationally related to a legitimate governmental interest." *Risko*, 284 Mich App at 465 (internal quotations and citation omitted). "The party raising the equal protection challenge has the burden of proving that the challenged law is arbitrary and thus irrational." *Id*. (internal quotations and citation omitted). Plaintiff does not contend that he is a member of a protected class or that the zoning of his property or the ZBA's decisions infringed upon a fundamental right. Accordingly, plaintiff's equal protection claim is subject to rational basis review.

---

[9] We recognize that the MZEA was not in effect at the time of the decisions in *Sun Communities* and *Paragon Prop*. However, although the Court in *Sun Communities* properly recognized that "the only provision in the [then-applicable Township Zoning Act, MCL 125.271 et seq., prior to repeal by 110 PA 2006] providing for a direct appeal to the circuit court is MCL § 125.293a . . ., which authorizes a direct appeal made by a zoning board of appeals," *Sun Communities*, 241 Mich App at 670, the City and Village Zoning Act that was applicable at the time of *Paragon Prop* did authorize an appeal to circuit court from a decision of the legislative body of a city or village. See MCL 125.590, prior to repeal by 110 PA 2006. The Court nonetheless held that an immediate appeal was not required. Moreover, we are persuaded by those decisions that constitutional claims need not be raised immediately upon legislative action. In any event, we find that the seeming irregularity of legislative action arguably being taken by the ZBA, rather than the township board, requires that plaintiff's constitutional claims be considered.

Plaintiff's due process claim appears to relate both to the ZBA's 2012 denial of his variance request and the ZBA's 2011 determination that the zoning of his property is "agricultural." Plaintiff argues that the 2011 decision of the ZBA was unreasonable because most of the surrounding property is zoned "lake residential" and there is no "agricultural" property on the lake. Regarding his equal protection claim, plaintiff argues that the zoning of his property as "agricultural" and the ZBA's denial of a variance was a result of him being "singled out" as a "class of one." The United States Supreme Court has recognized such "class of one" claims. *Willowbrook v Olech*, 528 US 562, 564; 120 S Ct 1073; 145 L Ed 2d 1060 (2000). "A 'class of one' may initiate an equal protection claim by alleging that he or she 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013), quoting *Willowbrook*, 528 US at 564.

The available evidence from the March 10, 2011 ZBA meeting[10] suggests that plaintiff's island had never before been zoned, and that indeed was the determination of the deputy zoning administrator. In the interest of adhering to the ordinance's intent to zone all property within the township, the ZBA considered what zoning classification should apply to plaintiff's island. In so doing, the ZBA referred to Cass County parcel information for the island, assessment cards for the island, aerial photographs of the island, and the township zoning map, which revealed that none of the property around the lake was zoned "agricultural" and most of it was zoned "lake residential," but also revealed that one other island property was arguably (because of its "white" coloration on the zoning map) zoned "agricultural." The ZBA noted the fact that, because of the size of plaintiff's island, the height and width requirements would, if the property were zoned "agricultural," default to "rural residential" according to the ordinances. The ZBA proceeded to reverse the determination of the deputy zoning administrator that the property was "not zoned," and instead determined that it was zoned "agricultural." The ZBA's subsequent decision in 2012 to deny plaintiff's requested variance was premised on the ZBA's 2011 decision establishing the property's zoning classification as "agricultural."

The MZEA does not authorize a ZBA to make zoning determinations, and a ZBA therefore is not empowered to decide in what zoning district a particular piece of property should be placed in the first instance, or whether a property should be rezoned. Rather, as stated earlier, decisions regarding zoning and rezoning are legislative, rather than administrative, in nature. *Sun Communities*, 241 Mich App at 665. Moreover, the MZEA expressly authorizes local units of government to make zoning decisions by way of zoning ordinances, MCL 125.3201, and places the authority to adopt such zoning ordinances in the legislative body of a local government. MCL 125.3202. The "legislative body" of a township is defined as its board of trustees." MCL 125.3102(n). The township board is authorized to appoint a zoning commission[11] to formulate a zoning ordinance, MCL 125.3211, and the zoning commission is

---

[10] The record on appeal includes the minutes of the March 10, 2011 ZBA meeting, but does not include a transcript of that meeting.

[11] In certain circumstances, a township planning commission may exercise the authority of a zoning commission. MCL 125.3102(v); MCL 125.3301. It is unclear from defendant's

directed to hold at least one public hearing, MCL 125.3306, and to adopt and file with the township board its recommendations for a zoning plan, for the establishment of boundaries of zoning districts, and for the text of a zoning ordinance. MCL 125.3305. It is then the obligation of the township board to consider and vote upon the adoption of a zoning ordinance. MCL 125.3401(5). It is not apparent from the record that any of that occurred relative to plaintiff's property. By contrast, a ZBA is authorized under the MZEA to "hear and decide questions that arise in the administration of the zoning maps, including the interpretation of the zoning maps," as well as to grant variances. See MCL 125.3603. It also is authorized to "hear and decide appeals from and review any administrative order, requirement, decision, or determination made by an administrative official or body charged with enforcement of a zoning ordinance adopted under this act." *Id*.

Presumably, it is pursuant to the latter authority that the ZBA in this case decided in 2011 to reverse the decision of the deputy zoning administrator that the property was "not zoned," and decided instead that the property "is zoned" and "interpret[ed] the zoning map to determine that the property is zoned AG" (and phrased its 2011 board minutes in that manner). However, in light of the fact that the circuit court did not consider plaintiff's constitutional claims, and that the record before this Court contains only the minutes of the 2011 ZBA meeting (and not the transcript of that meeting), we are unable to conclusively determine from the current record whether the ZBA's decision was in fact an "interpretation" of the map, as the phrasing of the meeting minutes suggest, or whether the ZBA in fact made an initial zoning decision (or a rezoning decision) regarding the property in question, in excess of the authority granted to it under the ordinance and the MZEA.

Our concerns in that regard are heightened by the following additional considerations. First, it is apparent from the 2011 ZBA meeting minutes alone that the ZBA apparently felt obliged to "zone" the property because the zoning ordinance reflects an intent to zone all property. However, any failure of the township board, as the township's legislative body, to zone a particular piece of property, notwithstanding an intent to zone all property, does not empower the ZBA to take upon itself the responsibility of zoning an unzoned property. That obligation remains that of the township board. Second, the ZBA appears to have done more than simply interpreting a then-existing zoning map. Rather, it considered assessment cards and aerial photographs, and entertained argument regarding the wetland characteristics of the island, fluctuations of lake level, ecological and habitat considerations, potential adverse effects (including on visibility from neighboring properties and on sub-surface water resources), public sentiment against construction on the island, whether emergency vehicles would have access to the property, how the property "should be" zoned, and entreaties to "zone" the property "unbuildable." While those factors may be valid considerations, by a legislative body, in determining how a property should be zoned, or by a ZBA in determining whether a variance

ordinances whether defendant's planning commission is authorized to exercise, or is exercising, the authority of a zoning commission; the ordinance establishing the powers of defendant's planning commission does not explicitly reference zoning but provides that the planning commission has the authority to "make, amend and adopt a basic plan as a guide for the development of unincorporated portions of the township" and submit such a plan to the Cass County Planning Commission.

from zoning should be granted, they are not proper considerations in determining from an existing zoning map whether and how a property is in fact zoned, or whether a zoning administrator erred in determining, following his own investigation and analysis, that the property was "not zoned."

Finally, and while not a part of the record on appeal,[12] we take note of the current Porter Township Zoning Map, adopted January 10, 2012—after the ZBA's March 10, 2011 meeting. At that 2011 meeting, the appealing township planning commission chairman described that the island "appeared to him to be white" on the then-existing zoning map. However, the current and apparently subsequently adopted map depicts plaintiff's island as blue in color, identically with the coloring of the lake that surrounds it, not white, as was represented at the 2011 meeting (and as purportedly was the basis for the ZBA's decision to zone the property "agricultural"). See http://portertownship.org/zoningmap130726.pdf (accessed March 31, 2015). This raises many questions regarding whether the zoning ordinance was amended after the 2011 ZBA meeting, whether it was amended by the legislative body or by the ZBA, whether the zoning specifically of plaintiff's island was changed after the 2011 ZBA meeting,[13] whether the 2011 decision of the ZBA (as well as the subsequent 2012 decision of the ZBA to deny plaintiff's request for variance, being premised on the applicability of the "agricultural" zoning classification adopted by the ZBA in 2011), remains effective, and the meaning of the blue lake-like coloration of the island on the current zoning map, which color does not appear in the map's zoning legend. The circuit court should consider all of these issues on remand.

Further, if plaintiff's property is in fact zoned "agricultural" (as defendant contends, but the current zoning map appears to refute), or has now been otherwise zoned (perhaps as "unbuildable"), plaintiff should be allowed to present argument that such a classification is arbitrary and capricious and not rationally related to a legitimate government interest. *Lima Twp*, 302 Mich App at 503; *Frericks v Highland Twp*, 228 Mich App at 594.[14] We therefore conclude that the best course of action is to remand for consideration of plaintiff's due process and equal protection claims by the circuit court in the first instance.

## C. CONCLUSION

In light of the circuit court's erroneous determination that it lacked jurisdiction over plaintiff's due process and equal protection claims, we remand for the circuit court to consider

---

[12] This Court may take judicial notice of a fact that is "not subject to reasonable dispute" and may take such notice whether or not requested by a party. MRE 201; *Hetrick v Friedman*, 237 Mich App 264, 269; 602 NW2d 603 (1999).

[13] The current zoning map reflects that, unlike plaintiff's island, the other referenced island continues to be depicted with a white coloration.

[14] In considering any such arguments, the circuit court should, on remand, assess the ordinance definitions discussed earlier in this opinion, in the context of an "agricultural" or other zoning classification, to determine whether such a classification is arbitrary and capricious as applied to an island property.

those claims on their merits. We therefore reverse the circuit court's November 14, 2013 order granting summary disposition to defendants on Counts II and III of plaintiff's complaint.

Because the ZBA's 2012 decision denying plaintiff a variance, and the circuit court's review of that decision, were premised on the property's 2011 "agricultural" zoning designation, we also vacate the ZBA's decision and the circuit court's November 27, 2012 order affirming the ZBA's decision. Because we do so, the portion of the circuit court's order regarding plaintiff's claim for regulatory taking becomes moot, and we likewise vacate that portion.

Vacated in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Mark T. Boonstra