*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENNIS PIERCE, SUZANNE PIERCE, DOUG ALLMAN, and ELAINE ALLMAN,

Plaintiffs-Appellants,

v

CECIL NYE and NYE'S TRAP RANGE,

Defendants-Appellees.

UNPUBLISHED
June 24, 2025
2:23 PM

No. 368883
Grand Traverse Circuit Court
LC No. 2021-035809-CH

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

In this private zoning enforcement matter, plaintiffs appeal as of right the trial court's order: (1) denying their claim of nuisance per se and request for injunctive relief, and (2) ruling that the sport shooting activity on the east side of defendants' property was a lawful nonconforming use. We affirm.

## I. FACTS

This case arises from plaintiffs' concerns of increased shooting activity at Nye's Trap Range, which is a sport shooting range located in Paradise Township. The range encompasses 40 acres on a long and narrow parcel of land, and it is zoned in an agricultural district. The property was purchased by Delbert Nye in 1965, and the range opened in 1973 or 1974.[1]

The range quickly began operating as a prior nonconforming use when zoning in Paradise Township began. An interim zoning ordinance was instituted in 1975, but a new zoning ordinance was adopted in 1979, which repealed the interim zoning ordinance. The 1979 ordinance did not

---

[1]Delbert died in January 2017, but Cecil Nye, Delbert's grandson, has owned and operated the range since it was conveyed to him in 2016.

permit shooting ranges in agricultural districts by right or by special use permit.[2]  See 1979 Ordinance, §§ 15.10 and 15.11.  The 1979 ordinance governed nonconforming uses as follows: "At the discretion of the owner, the lawful use of any building, structure, land or premises existing prior to the effective date of this Ordinance, may be continued, but no such building or structure or land use shall be enlarged or extended, except as provided herein."  1979 Ordinance, § 9.12. In 2008, the township adopted the current zoning ordinance, which permitted shooting ranges in agricultural districts by a special land use permit, see 2008 Ordinance, § 6.04; however, there is no dispute that defendants never applied for such permit.

When the range first opened, it was primarily used for trap shooting[3] on the west side of the property, but by 1975, about 10% of the shooting activity took place on the east side of the property.  In Spring 2021, the sporting clays[4] course on the east side of the property was "upgraded" for "safety reasons."  After the upgrades to the eastern part of the property were made, several adjacent property owners noticed more frequent and louder shooting activity; some of the property owners decided to contact the township's zoning administrator about their concerns.  The township's zoning administrator began an investigation, but the township supervisor quickly instructed him to end it because the township board previously determined that the range was considered a lawful nonconforming use, and the township did not want to waste any more resources on the matter.[5]

In June 2021, plaintiffs filed suit, arguing that that the upgrades made to the east side of the range constituted an expansion of the prior nonconforming use in violation of the zoning ordinance.  Plaintiffs requested that the trial court "enter an order enjoining Defendant from continuing to develop, install, and operate shooting stations in the area complained of, and declare

---

[2] We acknowledge that the trial court incorrectly stated that the 1979 ordinance "allowed gun ranges in the agricultural district" when it clearly did not.  See 1979 Ordinance, §§ 15.10 and 15.11.  Nevertheless, the trial court very clearly stated that there was "sufficient evidence to find a history of sport shooting on the eastern portion of the property from the mid[-]1970's through the present."  Therefore, the trial court's factual findings, in conjunction with the plain language of the 1979 ordinance, display that the nonconforming use was established before the 1979 ordinance.

[3] Trap shooting involves five shooters who shoot at clay pigeons, or targets, launched from trap houses.  Each shooter takes five shots in each position, for a total of 25 shots each.

[4] Sporting clays shooting is a "fairly new" form of shooting similar to "a hunting scenario."  It varies from trap shooting in that: (1) the shooting angles are different; (2) each round of shooting involves 50 shots over the course of 10 shooting stations; and (3) trap ranges are "set in concrete," but sporting clays courses have "portable" machines.

[5] In 2001, and again in 2005, one of the adjacent property owners complained about increased shooting activity on the west side of the range.  The township responded to both complaints, finding that the range was considered a lawful nonconforming use and was therefore not in violation of the zoning ordinance.  Notably, later in 2021, the township board discussed two complaint letters related to the range, and the board's consensus "was to take no action."

that the addition of trap shooting stations as carried out by Defendant constitutes a public nuisance per se . . . ."[6]  After a bench trial, the trial court found that plaintiffs failed to demonstrate that defendants' actions amounted to nuisance per se; therefore, plaintiffs lacked standing to seek equitable relief.  The trial court held "that the sport shooting on the eastern portion of Defendants' property is a legal, prior nonconforming use, which does not violate the Ordinance or the [Sport Shooting Ranges Act (SSRA)]."  The trial court reasoned as follows:

> The Court finds that, based on the testimony introduced at trial, there is sufficient evidence to find a history of sport shooting on the eastern portion of the property from the mid[-]1970's through the present.  The Court further finds that, when the SSRA was enacted on July 5, 1994, almost the entire 40 acres of Defendants' property were used for sport shooting, either as trap fields in the west or for hunting practice in the east.  The "preexisting geographical boundaries" or "area" of the Range must then include both the western and eastern portions of the property.  Arguably, the construction and installation of the sporting clays stations on the eastern portion is merely a continuation of a legal, prior nonconforming use.  Alternatively, Defendants are permitted to expand or increase membership or opportunities for public participation and expand or increased events and activities within the preexisting geographical boundaries, even if not in compliance with the Ordinance pursuant to the SSRA.  Ultimately, the Court finds that expansion of the sport shooting in the east, via use or facilities, is permitted by the statute.

Plaintiffs now appeal as of right.

## II.  NONCONFORMING USE

Plaintiffs argue that the trial court erred by concluding that the recent use of the east side of the range was not an unlawful expansion of defendants' prior nonconforming use.  We disagree.

### A.  STANDARD OF REVIEW

"The circuit court's findings of fact, if any, following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo."  *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013).  "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made."  *Chelsea Investment Group, LLC v City of Chelsea*, 288 Mich App 239, 251; 792 NW2d 781 (2010).  "The trial court's findings are given great deference because it is in a better position to examine the facts."  *Id*.  But a "[d]e-novo review means that we review the legal issue

---

[6] Notably, plaintiffs also moved for summary disposition under MCR 2.116(C)(8), requesting the trial court to find as a matter of law that the Sport Shooting Ranges Act (SSRA) "does not protect sports shooting ranges from ordinance enforcement actions where a nonconforming use is being expanded to an area not previously used for the nonconforming use at the time the SSRA was enacted."  Defendants also moved for summary disposition under MCR 2.116(C)(8) and (C)(10), requesting that the trial court dismiss plaintiffs' complaint and award defendants sanctions.  The trial court denied both motions for summary disposition.

independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted). We review "de novo both a trial court's jurisdictional rulings, and the proper interpretation and application of statutes and court rules." *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018) (citations omitted). "The interpretation of a zoning ordinance presents a question of law subject to review de novo." *Risko v Grand Haven Charter Twp Zoning Bd of Appeals*, 284 Mich App 453, 458-459; 773 NW2d 730 (2009) (quotation marks and citation omitted). We also review de novo the circuit court's equitable decisions concerning nuisance-abatement proceedings. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 270; 761 NW2d 761 (2008).

## B. ANALYSIS

"An existing nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *EDW C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 341-342; 810 NW2d 621 (2011); see MCL 125.3208(1) ("If the use . . . of the land is lawful at the time of enactment of a zoning ordinance or an amendment to a zoning ordinance, then that use may be continued although the use does not conform to the zoning ordinance or amendment."). "Once a nonconforming use is established, a subsequently enacted zoning restriction, although reasonable, will not divest the property owner of the vested right." *Heath Twp v Sall*, 442 Mich 434, 439; 502 NW2d 627 (1993). "Nonconforming uses may not generally be expanded, and one of the goals of local zoning is the gradual elimination of nonconforming uses." *Edward C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 342; 810 NW2d 621 (2011). "The continuation of a nonconforming use must be substantially of the same size and the same essential nature as the use existing at the time of passage of a valid zoning ordinance." *Id*. "Moreover, the nonconforming use is restricted to the area that was nonconforming at the time the ordinance was enacted. Nonconforming use involves the physical characteristics, dimensions, or location of a structure, as well as the use of the premises." *Id*. (citation omitted).

In this case, the range was operating as a prior nonconforming use under both the 1979 ordinance and the current ordinance. See 1979 Ordinance, §§ 15.10 and 15.11; 2008 Ordinance, § 6.04. The current ordinance governs nonconforming uses of land as follows:

1. Where, at the effective date of adoption or amendment of this Ordinance, a lawful use of land exists that is no longer permissible under the terms of this Ordinance as enacted or amended, such use may be continued, so long as it remains otherwise lawful, subject to the following provisions:

a. No such nonconforming use shall be enlarged or increased, nor extended to occupy a greater area of land than was occupied at the effective date of adoption or amendment of this Ordinance;

b. No such nonconforming use shall be moved, in whole or in part, to any other portion of the lot or parcel occupied by such use at the effective date of adoption or amendment of this Ordinance; and

c. If such nonconforming use of land ceases . . . for a period of more than [12] months, any subsequent use of such land shall conform to the regulations specified by this Ordinance. . . . [2008 Ordinance, § 19.03.]

The crux of the issue presented on appeal is whether the sporting clays course on the east side of the property was unlawfully extended or enlarged in 2021, in violation of 2008 Ordinance, § 19.03(1)(a). We conclude that it was not.

When the range first opened, it was primarily used for trap shooting on the west side of the property, but beginning in 1973, rituals were held on the east side of the range to honor the deaths of shooters, and by 1975, about 10% of the shooting activity took place on the east side of the property. Shooting opportunities on the east side of the range began as a "special promotion" and included a bird-hunting simulation area with five manual hand throwers and three handset throwers in pine trees, which were portable and provided shooters with "different" angles. Notably, beginning in 1978, Delbert hosted "fun shoots," or informal competitions on the east side of the property, which simulated bird hunting and consisted of games involving "hand-throw[n] clay target devices."

Over time, upgrades were made to the east side of the property. In the early 1990's, a mechanical launcher was built for sporting clays shooting. In Spring 2021, the sporting clays course was "upgraded" for "safety reasons." Specifically, 10 shooting stations were added, which included "uprights" that allowed shooting in a "limited area to the right or left"; the "old throwers" were replaced with 20 new, portable, "battery-operated throwers"; some trees were removed; and walkways were added. Multiple witnesses testified that these safety upgrades formalized the sporting clays shooting operation on the east side of the property, but that the style of shooting remained the same, i.e., throwing targets to simulate hunting.

After the upgrades were made to the eastern side of the range in Spring 2021, adjacent property owners began to complain about more frequent and louder shooting activity. There was conflicting testimony about the range's hours of operation at the hearing. As an initial matter, there was no evidence indicating what the range's initial hours of operation were. Some witnesses generally claimed that the shooting activity on the eastern side of the range was more frequent, but there was no evidence introduced—such as event flyers or Google hours of operation—to support these statements. Moreover, Cecil Nye, who operated the range, testified that: (1) he adheres to the Department of Natural Resources regulations, and (2) no shooting occurs before 10:00 a.m. or after 6:00 p.m.[7]

Some witnesses also testified that they did not see any evidence of shooting activity on the east side of the property before 2021. But other witnesses testified that: (1) the throwers' locations were not obvious before the upgrades were made, and (2) shooters always picked up their equipment and shells after they were done shooting. Additionally, as previously stated, witness

---

[7] Although the range, as a prior nonconforming use, does not need to conform with the current ordinance, it is notable that the 2008 ordinance states that shooting range hours shall be between 9:00 a.m. to 7:30 p.m. 2008 Ordinance, § 13.41(6).

testimony established that very specific events were held on the eastern side of the property beginning in 1973.

We conclude that the trial court did not clearly err by determining that the Spring 2021 upgrades were merely a continuation of the range's legal, prior nonconforming use status. The upgrades did not amount to an entirely new shooting concept or facility. Instead, the upgrades were made to regulate the shooting range and effectuate a safer experience for the range's customers. Importantly, the same style of shooting took place before and after the upgrades were made. Accordingly, the continuation of the nonconforming use of the property did not expand the previous nonconforming use. See *Edward C Levy Co*, 293 Mich App at 342.

Plaintiffs further contend that the sporting clays course is not a protected activity under the SSRA, MCL 691.1541 *et seq.*; however, the statement of questions in plaintiffs' brief on appeal fails to mention this issue. Under MCR 7.212(C)(5), "[e]ach question must be expressed and numbered separately and be followed by the trial court's answer to it or the statement that the trial court failed to answer it and the appellant's answer to it." Because plaintiffs have not properly presented this statutory issue in their statement of questions presented, it is waived. *Van Buren Twp v Garter Belt Inc*, 258 Mich App 594, 632; 673 NW2d 111 (2003) ("Defendant waived this issue because it was not included in defendant's statement of questions on appeal.").

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney